UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John and Jane Doe A, individually and as grandparents and next friends of Doe A, a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:23-CV-00450 |
| v. | ) ) | |
| | ) | Judge Edmond E. Chang |
| The Board of Education of the City of Chicago; Pedro Martinez, individually and as an Agent of District 299; Bosede Bada, individually and as an Agent of District 299; Annette Dowd, individually and as an Agent of District 299; Adriene Thomas, individually and as an Agent of District 299; Irene Barrera, individually and as an agent of District 299, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

John and Jane Doe, on behalf of their grandchild, Doe A,[1] allege that the Chicago Board of Education and individual school officials discriminated against Doe A on the basis of his race and disability in violation of the Equal Protection Clause of the Fourteenth Amendment. R. 1, Compl. at 2.[2] The Plaintiffs also assert state law claims for willful and wanton supervision, willful and wanton hiring and retention,

---

[1]Although the complaint calls the grandparents "John and Jane Doe A," this Opinion will drop the "A" to avoid confusion with Plaintiff Doe A. For now, the Court allows the grandparents to proceed under the pseudonym given how easy it would be to connect their names to the identity of their grandchild. *See* Fed. R. Civ. P. 5.2(a)(3).

[2]Citations to the record are noted as "R." followed by the docket number.

negligence, assault, and battery.[3] They seek compensatory damages, punitive damages, and attorney's fees. The Defendants now move to dismiss the complaint for failure to adequately state a claim. Fed. R. Civ. P. 12(b)(6); R. 15, Defs.' Mot. to Dismiss at 1. For the reasons discussed in this Opinion, the motion to dismiss is granted as to the federal claims. The dismissal is without prejudice to filing an amended complaint if the Plaintiffs think that they can fix the gaps described in this Opinion. In light of the dismissal of the federal claims, there is no need (at least not yet) to address the sufficiency of the state law allegations.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Plaintiffs' allegations stem from two incidents that happened in 2022 when Doe A, a Black student with a disability, was attending Suder Elementary School. Compl. ¶¶ 30, 53. The first incident was in January 2022. *Id.* ¶ 31. Doe A asked his teacher, Adriene Thomas, if he could use the restroom. *Id.* She said yes—but she also allowed another student, Doe B, to use the restroom at the same time as Doe A. *Id.* ¶¶ 31–32. While both students were in the restroom, Doe B kicked open the stall in which Doe A was sitting on the toilet, and then took photos and videos of Doe A. *Id.* ¶ 33. Doe B posted the video on

---

[3]This Court has federal-question jurisdiction of the federal claims under 28 U.S.C § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

social media, and it was viewed by other students, who in turn harassed and bullied Doe A. *Id.* ¶¶ 34–35. The Plaintiffs allege that Thomas did not report the incident to the appropriate school official. *Id.* ¶¶ 26, 36. Doe A's grandparents, John and Jane Doe, learned of the incident and demanded a meeting with school administrators—but the school did not convene one until much later. *See id.* ¶¶ 37, 44. Instead, only Does A and B met with school administrators, and during the meeting, Doe A was made to feel that the bathroom incident was his fault. *Id.* ¶ 38. The school imposed no discipline against Doe B. *Id.* ¶ 39. Sometime later (the complaint says only "[b]efore" spring break in 2022), Does A and B had an altercation caused by, the Plaintiffs say, Doe B's bullying of Doe A. *Id.* ¶ 40. Vice Principal Annette Dowd notified John and Jane Doe of the incident. *Id.* John and Jane Doe then met with Principal Bosede Bada, Dowd, and Thomas about the bullying of Doe A. *Id.* ¶ 42. During the meeting, Principal Bada allegedly confessed that she had "dropped the ball" on the bathroom incident and that she was unaware that there had been no meeting to discuss the bathroom incident with Doe A's grandparents. *Id.* ¶ 42.

The second incident happened in April 2022. This time, Doe A was in the hallway at school. Compl. ¶ 47. Irene Barrera—a teacher at Suder—approached Doe A, grabbed him by the front of his hoodie, and told him to go back to class. *Id.* ¶¶ 45, 47. Doe A reported the incident to his teacher (still Adriene Thomas), telling her that he felt that Barrera had targeted him because of his race. *Id.* ¶ 47. When Thomas asked why he felt the incident was racially motivated, Doe A said that it was because Barrera was white. *Id.* Sometime later (the complaint does not say when), Principal Bada

3

wrote John and Jane Doe to notify them that the school had received allegations of bullying involving Doe A, and that the school planned to conduct an investigation as required by the Board of Education Anti-Bullying Policy. *Id.* ¶ 49. The letter explained that the school intended to issue a final determination within 10 school days. *Id.* The letter also provided contact information in case John and Jane Doe had questions or concerns. *Id.*

The Plaintiffs allege that the school's failure to address and prevent the incidents of bullying—from both Doe B and Barrera—was discriminatory. So the Plaintiffs filed this suit, claiming that the Board and its employees discriminated against Doe A on account of his race and disability, and seeking compensatory damages, punitive damages, and attorneys' fees.[4] Compl. ¶¶ 3–4, 141. They also assert claims under state law for assault, battery, negligence, willful and wanton supervision, hiring, and retention. *Id.* ¶¶ 3–4.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell*

---

[4]The complaint also makes reference to a Fourth Amendment violation but does not otherwise elaborate or advance the claim. Compl. ¶ 3. The Plaintiffs conceded in their response brief that they did not intend to assert a Fourth Amendment claim. R. 19, Pls.' Resp. at 8.

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[5] The Seventh Circuit

has explained that this rule "reflects a liberal notice pleading regime, which is in-

tended to 'focus litigation on the merits of a claim' rather than on technicalities that

might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)

(quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to

state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police

of Chi Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

at 570). These allegations "must be enough to raise a right to relief above the specu-

lative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the as-

sumption of truth are those that are factual, rather than mere legal conclusions. *Iq-

bal*, 556 U.S. at 678–79.

### III. Analysis

### A. Standing

### 1. Representative Capacity

Civil Rule 17(c) allows a minor child's guardian to represent the child in litiga-

tion. Fed. R. Civ. P. 17(c). If a minor has no guardian—and no other duly appointed

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

representative—or the minor's guardian is incompetent to represent them, then the court may grant the minor permission to sue by a next friend or a court-appointed guardian ad litem. *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997). Only with court permission may a next friend or guardian ad litem bypass the guardian. *Id.* And courts generally should refrain from appointing special representatives where a minor has a competent guardian. *Id.*; *see also* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1570, 497 (2d ed.1990) ("As a general rule, a federal court cannot appoint a guardian ad litem in an action in which the infant … already is represented by someone who is considered appropriate.").

In this case, the parties agree that John Doe, not Jane Doe, is Doe A's legal guardian. Defs.' Mot. to Dismiss at 4; Pls.' Resp. at 3. Neither party has challenged the competence of John Doe to represent Doe A's interests in this action. So John Doe—as Doe A's guardian—may represent Doe A; Jane Doe lacks standing to assert claims on his behalf and cannot act as a representative.

### 2. Grandparents' Individual Claims

In their motion to dismiss, the Defendants argued that John and Jane Doe do not have standing to bring their own individual claims. Defs.' Mot. to Dismiss at 4 (citing Compl. ¶ 10). But in the response brief, the Plaintiffs clarified that John and Jane Doe are not asserting individual claims. Pls.' Resp. at 4. With that concession in place, there are no individual claims being asserted by the grandparents.

## B. Redundancy

The Defendants next argue that the § 1983 claims asserted against Pedro Martinez, Bosede Bada, Annette Dowd, Adriene Thomas, and Irene Barrera in their *official* capacities should be dismissed as redundant because the Plaintiffs already separately asserted claims against the Board of Education. Defs.' Mot. to Dismiss at 4–5; Compl. ¶¶ 50–61 (Count 1). The Defendants are right: by naming the Individual Defendants in their official capacities *and* also naming the Board, the complaint is really suing the Board of Education multiple times over. This is true because an action brought against an individual in their "official" capacity "is tantamount to a claim against the government entity itself." *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (explaining that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). When both a local governmental entity and an individual are sued in their official capacity, the suit against the officials is redundant and should be dismissed. *See Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987). So the official-capacity § 1983 claims against Pedro Martinez, Bosede Bada, Annette Dowd, Adriene Thomas, and Irene Barrera are dismissed. If the Plaintiffs file an amended complaint on the federal claims, and if the amended complaint asserts a

7

§ 1983 claim against the Board, then they need not re-plead official-capacity claims against the Individual Defendants.

## C. Pedro Martinez

Next, Pedro Martinez, who is Superintendent of the District, argues that he should be dismissed as a defendant because the complaint does not accuse him of personal wrongdoing. Defs.' Mot. to Dismiss at 6. The Plaintiffs respond that Martinez did personally participate and cause the unconstitutional actions that harmed Doe A, citing the complaint's allegation that he "has a duty to supervise and protect the physical safety of students at Suder." Pls.' Resp. at 7. But this allegation, without more, relies solely on Martinez's supervisory status and thus amounts to invoking respondeat superior liability. There is no respondeat superior liability under § 1983—indeed, there is no vicarious liability under § 1983 at all. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (explaining that "*Monell* rejected the common-law theory of respondeat superior liability for an employee's actions."). The allegations cited by the Plaintiffs as support for Martinez's involvement do not mention Martinez personally and instead refer to the actions of the Board and the individual school officials as a collective group. Pls.' Resp. at 7–8 (citing Compl. ¶¶ 53–60, 63–64, 69–88, 91–96). For this reason, the § 1983 claim against Pedro Martinez in his individual capacity is dismissed.

## D. Section 1983

Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (cleaned

8

up). To adequately state a § 1983 claim, plaintiffs must allege that they were "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). Here, the Plaintiffs allege that the Individual Defendants (and the Board as their employer) deprived Doe A of equal protection under the Fourteenth Amendment.[6] Compl. ¶¶ 51–67. The Defendants move to dismiss, arguing that the allegations do not set forth sufficient facts to support the claim. Defs.' Mot. to Dismiss at 8–9. As discussed next, the Defendants are right that no viable equal protection has been pleaded.

## 1. Individual Defendants

The Equal Protection Clause of the Fourteenth Amendment prohibits state and local governments from discriminating on the basis of certain protected classifications and also bars governments from targeting a person irrationally as a so-called "class of one." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). For an equal protection claim based on class membership to survive a motion to dismiss, plaintiffs must sufficiently allege that they were treated differently by the government based on membership in a protected class, and that the defendant acted with discriminatory intent. *See Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). The other form of equal-protection claim is different: a class-of-one claim requires the plaintiff to allege

---

[6]In the complaint, the Plaintiffs also refer obliquely to Title IX, 20 U.S.C. §§ 1681–1688, Compl. ¶ 64, but then failed to advance any theory of liability under this statute. Because the Plaintiffs also failed to respond to the Defendants' argument against this claim, the Plaintiffs have in effect waived any Title IX claim. Defs.' Mot. to Dismiss at 9 n.4.

that (1) a state actor intentionally treated them "differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget*, 595 F.3d at 695. The Plaintiffs do not explicitly say which theory they are pursuing. In any event, neither theory is adequately pleaded.[7]

Under the class-membership theory, the Plaintiffs must allege that Doe A was treated differently by the Individual Defendants based on his membership in a protected class due to discriminatory intent.[8] *Greer*, 212 F.3d at 370. The Plaintiffs argue that the Defendants "intentionally discriminated against [Doe A] as a member of an identifiable black student [*sic*] with a disability by knowingly failing to address the widespread and [*sic*] bullying and harassment against [Doe A]." Compl. ¶ 53. But this sort of conclusory restatement of the elements cannot, without more, sustain an equal protection claim even at the pleading stage. The Plaintiffs also cite Paragraphs 36–39, 54, and 63–64 as a basis for their allegations. Pls.' Resp. at 9. As Defendants correctly point out, Paragraphs 54 and 63–64 assert legal conclusions that are not

---

[7]In assessing the sufficiency of the § 1983 claims against the Individual Defendants, the Court's analysis also applies to the Defendants' Rule 8 argument that the complaint's reliance on group pleading (that is, on allegations that apply to all defendants as an undifferentiated group) fails to provide enough notice of the claims. Given the interwoven nature of these two issues, the Court addresses them simultaneously.

[8]The Supreme Court has held that disability is not a "suspect classification" under the Equal Protection Clause, so plaintiffs alleging an equal protection violation on the basis of their disability also must allege that the state actor's discrimination was not rationally related to a legitimate state interest. *See Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366–68 (2001); *United States v. Harris*, 197 F.3d 870, 874–75 (7th Cir. 1999). Here, for clarity and convenience's sake, this Opinion will not address this requirement separately— instead, because the class-of-one equal-protection claim must also pass a rational-relationship test, the Court's discussion on that point applies to the Plaintiffs' disability-based claim too.

entitled to an assumption of truth. R. 22, Defs.' Reply at 5. And Paragraphs 36–39 assert only the following: Thomas did not report the bathroom incident; Doe A's grandparents requested a meeting with administrators to discuss it; Doe A was made to feel responsible for Doe B's conduct; and Doe B was not disciplined. These allegations do not allege—either directly or by way of inference—that the Defendants intentionally treated Doe A differently based on his race. There are no allegations that other non-Black (or non-disabled) victims of bullying had their complaints better addressed by school staff or that White students were rarely disciplined for their harassment of peers. Though there is an allegation of racial profiling against Barrera (the teacher who approached Doe A in the hallway) in Paragraph 45, there are no concrete facts set forth from which to infer race discrimination. For example, there are no allegations setting forth other instances during which Berrera (or even other teachers) targeted Black students in the hallways. Was Doe A standing next to a White student who also was not in class, and yet Barrera singled Doe A out? The complaint is bereft of facts of that sort. Without more, the allegation of racial profiling is not concrete enough to survive dismissal.

Moving on to the "class of one" theory, the complaint suffers from similar shortcomings. For this type of claim, the Plaintiffs must adequately allege that (1) a state actor intentionally treated Doe A differently than others similarly situated; and (2) that there is no rational basis for it. As discussed earlier, the complaint is devoid of facts or allegations from which to infer that the school's handling of the bullying incidents involving Doe A was somehow different than its handling of bullying incidents

11

involving other students. The Plaintiffs' response brief acknowledges this require-
ment—but then makes no attempt to connect the factual allegations to it. Pls.' Resp.
at 9. Though the Seventh Circuit has repeatedly confirmed that "[p]laintiffs alleging
class-of-one equal protection claims do not need to identify specific examples of simi-
larly situated persons in their complaints," *Miller v. City of Monona*, 784 F.3d 1113,
1120 (7th Cir. 2015) (citing *Capra v. Cook Cnty. Bd. Of Review*, 733 F.3d 705, 717 (7th
Cir. 2013)), a proper claim under this theory must assert a "wrongful act that neces-
sarily involves treatment departing from some norm or common practice." *Geinosky
v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (citing *McDonald v. Vill. of Win-
netka*, 371 F.3d 992, 1009 (7th Cir. 2004)). It might be true that Doe A was singled
out by the school administration, but the complaint lacks details to lead to this infer-
ence (let alone that the decision was based on an *irrational* basis, as distinct from a
mistake or neglect). The equal protection claims against the Individual Defendants
are dismissed.[9]

### 2. The Board

The Plaintiffs' claims against the Board under 42 U.S.C. § 1983 also fall short.
A municipality is liable under § 1983 only if the unconstitutional act complained of is
caused by (1) an official policy adopted and promulgated by its officers; (2) a

---

[9]The Defendants also argue that the Individual Defendants are entitled to qualified
immunity on the § 1983 equal protection claim. Defs.' Mot. to Dismiss at 9–10. Because the
claim is dismissed for other inadequacies, there is no need to address the qualified immunity
argument at this time. If the Plaintiffs file an amended complaint stating a claim against the
Individual Defendants, then the Court will then consider qualified immunity.

governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't. of Soc. Serv. of New York*, 436 U.S. 658, 690 (1978)). Thus, to adequately state a *Monell* claim—that is, to allege that a municipality caused a deprivation of the plaintiff's constitutional rights—the plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (cleaned up).

In this case, the Plaintiffs do not attempt to advance a *Monell* theory. The response brief sets out the general requirements for a § 1983 claim against *individuals*, Pl.'s Resp. at 8, but then fails to engage at all with the additional requirements for *Monell* claims. The Plaintiffs even acknowledge that a *Monell* theory is required as to their claim against the Board, but do not attempt to connect any facts in the complaint to a theory of municipal liability. Pls.' Resp. at 8. But even if they had tried to satisfy *Monell*'s requirements, the current allegations would fall short.

First, the allegations setting forth the school's Anti-Bullying Manual negate any contention that there was an official policy adopted by the school to discriminatorily fail to address bullying issues for some students but not all. To the contrary, the official school policy instead mandated intervention, reporting, and cooperation in investigations of bullying. Compl. ¶¶ 20–29. Nowhere in the official policy—or the Plaintiffs' characterization of it—does it allow for a different handling of bullying incidents depending on the student. Second, the Plaintiffs' allegations focus on two

13

separate incidents—one with Doe B and one with teacher Barrera—which fall short of adequately alleging a "widespread and well settled" practice or custom as is required for the second form of *Monell* liability. *Thomas*, 604 F.3d at 303. And third, the Plaintiffs do not advance a final policymaker argument at all. The closest that the Plaintiffs come to such a theory is alleging that Superintendent Pedro Martinez, as someone with supervisory and corrective duties, personally participated in the constitutional deprivation. Pls.' Resp. at 7. As discussed earlier in this Opinion, the claims against Pedro Martinez—as currently alleged—amount to a theory of vicarious liability, which is no-go for § 1983 claims. *See supra* Section III.C; *Howell*, 987 F.3d at 653. For these reasons, the § 1983 claim against the Board is dismissed.

Ordinarily, the federal courts should grant leave to file an amended complaint after granting a motion to dismiss, *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 347 (7th Cir. 2018) (quoting *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 382, 687 (7th Cir. 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.") (cleaned up), and the Court will do so here for the federal claims. But the Court is skeptical that the Plaintiffs can plausibly assert a *Monell* claim against the Board.

### E. State Law Claims

Because the federal claims are dismissed—albeit without prejudice and with leave to amend—the Court declines for now to address the state law claims. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th

Cir. 2012) (explaining that "when federal claims drop out of the case," the trial court "has broad discretion to decide whether to ... relinquish supplemental jurisdiction over the state-law claims"—with a "general presumption in favor of relinquishment"). If the Plaintiffs file an amended complaint, and the Defendants move to dismiss, and if the federal claims survive, *then* at that point the Court will address the state claims. If the Plaintiffs amend the complaint, and the Defendants move to dismiss, and if the federal claims are dismissed with prejudice, then the Court likely will relinquish jurisdiction over the state claims. Lastly, if the Plaintiffs do not file an amended complaint, then the dismissal of the federal claims will convert to a dismissal with prejudice, and the Court will relinquish jurisdiction over the state claims.

## IV. Conclusion

The federal claims are dismissed, though without prejudice and with leave to amend. The amended complaint, if filed, is due on February 24, 2025. If no amended complaint is filed, then the dismissal of the federal claims will automatically convert to a dismissal with prejudice (and jurisdiction over the state law claims will be relinquished). Separately, the Court orders the Clerk's Office to seal, for now, the complaint, R. 1. There is at least one reference to Doe A's name in the complaint. The

15

Plaintiffs shall file a corrected version of the complaint by February 18, 2025.

ENTERED:


      s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: February 7, 2025

16